IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS PENDEGRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-00816-NJR |
| | ) |
| MIKE KREKE, | ) |
| ALBERTO BUTILAID, | ) |
| DEPUTY ARNOLD, | ) |
| M. ETTER, | ) |
| LUKE BRANDENMEYER, | ) |
| DEPUTY TOLLIE, | ) |
| MICHELLE NORDIKE, | ) |
| TIMOTHY RUFF, | ) |
| NIDA SUBANI, | ) |
| JOSEPH HILIGANSTIEN, | ) |
| DEPUTY SHUMACKER, | ) |
| SERGEANT FAULKNER, | ) |
| PENNY GEORGE, | ) |
| NURSE MURPHY, | ) |
| BRANDY BEASLY, and | ) |
| JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Curtis Pendegraft is currently incarcerated at the Vienna Correctional Center in Vienna, Illinois, but was previously incarcerated at the Graham Correctional Center in Hillsboro, Illinois, and at the Clinton County Jail in Carlyle, Illinois. (Doc. 1 at 1-4.) Proceeding *pro se*, Pendegraft has filed a civil rights action pursuant to 42 U.S.C. § 1983 against officials at Vienna, Graham, and the Clinton County Jail, alleging that he was improperly treated for his hepatitis and infection-related problems during his tenure at each institution. (*Id.* at 1-4, 8.) Pendegraft seeks money damages and various types of injunctive and declaratory relief. (*Id.* at 18.)

This matter is now before the Court for a preliminary review of Pendegraft's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to Pendegraft's complaint, Pendegraft was incarcerated at the Clinton County Jail on April 8, 2014. (Doc. 1 at 8.) Seven days after he arrived at the jail, Pendegraft saw Nordike, a nurse at the jail, and told her of his problems with bone-related infections. (*Id.*) On May 7, 2014, a spot on Pendegraft's hip where a previous infection had been drained began to drain again, causing Pendegraft pain. (*Id.*) During a follow-up visit with Nordike on May 14, 2014, Pendegraft told her that he needed bandages to keep the injury covered to avoid an infection and to avoid transmitting his hepatitis to others. (*Id.*) Nordike told him to fill out a sick-call slip, but otherwise did nothing. (*Id.*) The next day, Pendegraft told Deputy Arnold of his need for bandages, but Arnold did not help him. Instead, Arnold told Pendegraft he would email Sergeant Brandenmeyer about the problem. (*Id.* at 9.) On May 17, 2014, Pendegraft tried again, telling Deputy Tollie about his need for bandages, but Tollie did nothing. (*Id.*)

On May 20, 2014, Pendegraft was taken to see Dr. Butilaid at the jail. (*Id.*) He told Butilaid about his history of bone-related problems, so Butilaid ordered a blood test. (*Id.*) Five days later, the test had not occurred, so Pendegraft followed up with Brandenmeyer, who told Pendegraft that he forgot to make the appointment. (*Id.*) Pendegraft also asked Brandenmeyer

about bandages for his hip, but Brandenmeyer again refused to provide Pendegraft with dressings. (*Id.*) Without bandages, Pendegraft used spare clothes to cover the wound. (*Id.*)

On June 3, 2014, Pendegraft was taken to the Clinton County Health Department for a blood test. (*Id.* at 10.) He spoke to a nurse at the clinic, who told Pendegraft and Brandenmeyer that the hip injury must remain covered. (*Id.*) When Pendegraft returned to the jail, Brandenmeyer took Pendegraft's extra clothes from him and did not give him bandages. (*Id.*)

On June 6, 2014, Pendegraft saw Dr. Butilaid again, this time to discuss the results of his blood test. (*Id.*) Butilaid told Pendegraft that his white blood cell count was high, but that he thought his problems were primarily due to arthritis. (*Id.*) He referred Pendegraft to a surgeon at St. Joseph Hospital. (*Id.*) Butilaid also discussed the need to keep the spot covered with Brandenmeyer. (*Id.*) One week later, Pendegraft still had not seen a specialist and his pain was worsening, so he followed up with Brandenmeyer. (*Id.*) Brandenmeyer told Pendegraft that he was still waiting for approval to take him to an outside doctor, and otherwise did nothing. (*Id.*)

On July 1, 2014, Pendegraft saw Dr. Ruff at St. Joseph Hospital. (*Id.* at 11.) Ruff examined Pendegraft and ordered a CAT scan, which revealed a bone infection in the iliac joint. (*Id.* at 11.) Ruff referred Pendegraft to two other specialists for treatment and told Brandenmeyer that the spot on his hip needed to be covered at all times. (*Id.*) On July 16, 2014, Pendegraft sent a letter to Brandenmeyer about the referrals to specialists, but he heard nothing. (*Id.*) He followed up with Tollie and Arnold the next day and told them of a new spot on his hip five inches from the other spot, and both told Pendegraft that they would follow up with Brandenmeyer. (*Id.* at 12.) He also wrote complaints to Sergeant Faulkner and Administrator Etter: Faulkner told Pendegraft that there would be no transfer to an outside specialist without a referral, while Etter said they were working on securing orders for a referral. (*Id.*)

On July 29, 2014, Pendegraft was seen by Dr. Subani, an infectious disease specialist (*Id.*) Dr. Subani determined that Pendegraft should be given a four-week course of antibiotics through a peripherally inserted central catheter to treat the infection. (*Id.* at 12.) On August 1, 2014, Pendegraft asked Tollie about the antibiotic treatment ordered by Subani, and Tollie told Pendegraft that he and other jail staff had decided against that treatment. (*Id.* at 13.) When Pendegraft objected, Tollie "got mad and put [him] in segregation." (*Id.* at 13.)

On August 3, 2014, Pendegraft pled guilty to his underlying offense and was sentenced to eight years in prison. (*Id.*) Pendegraft was on house arrest from August 2014 to January 2015; during that time, he was treated at home with antibiotics. (*Id.*) On January 28, 2015, he returned to the Clinton County Jail for transfer to a correctional center with the Illinois Department of Corrections. (*Id.*) Pendegraft arrived at the Clinton County Jail with five prescriptions given to him by his specialist for his infection issues, but when he was transferred to Graham Correctional Center one day later, unspecified prison officials made him leave his medications behind. (*Id.*)

On January 30, 2015, Pendegraft saw a John Doe physician at Graham. (*Id.* at 14.) Pendegraft told Doe that he had undergone a "medical furlough" and that he had a spot on his hip that was draining. (*Id.*) He said that he needed to keep the spot covered so that he did not develop further infections or infect others with hepatitis. (*Id.*) He also inquired about the medications that were taken from him during the transfer, and the doctor told him that his medications were not brought to Graham and that he could not have them at the prison. (*Id.*)

On February 17, 2015, Pendegraft was transferred from Graham to Vienna Correctional Center. (*Id.*) He saw Dr. Adams when he arrived and told Adams of his prior issues with bone infections. (*Id.* at 15.) He asked for bandages to keep his wound covered, and Adams provided him with some. (*Id.*) But he has had two problems since that point obtaining bandages: Murphy

denied him bandages on February 18, and Beasley denied him bandages on February 30.  (*Id.*)  He sent a grievance to Penny George about his lack of treatment, but he still has not received a regular supply of bandages.  (*Id.*)  He also says that he told Adams of his history of hepatitis and bone problems, and he claims that he is still being denied treatment.  (*Id.* at 15-16.)

On July, 28, 2015, Pendegraft filed a § 1983 complaint in this Court.  (*Id.* at 1.)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Pendegraft's *pro se* complaint into numbered counts, as shown below.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.  The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Kreke, Butilaid, Arnold, Etter, Brandenmeyer, Tollie, Nordike, Ruff, Subani, Shumacker, Faulkner, George, Murphy, Beasly, and Doe were indifferent to Pendegraft's needs, in violation of the Eighth Amendment.
>
> **COUNT 2:** Tollie placed Pendegraft in segregation at the Clinton County Jail for complaining about his need for care, in violation of the First Amendment.
>
> **COUNT 3:** Hiliganstien engaged in improper conduct in allowing Pendegraft to enter a plea of guilty, in violation of Pendegraft's constitutional rights.

Pendegraft's complaint focuses primarily on individual capacity claims against various jail and prison staff for failure to treat his medical conditions, so the Court will start there (**Count 1**).  Pendegraft's medical claims concerning his time at the Clinton County Jail are analyzed under the due process clause of the Fourteenth Amendment, while his claims concerning his time at Graham and Vienna are evaluated under the cruel and unusual punishment clause of the Eighth Amendment.  *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013).  This distinction is of no real difference, especially at this stage of the case, as the

elements for both claims are roughly the same. *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). To make out a claim under either amendment, a plaintiff must allege facts tending to show that he had a serious medical condition and that officials behaved recklessly–and not merely negligently–in response to that condition. *Id.*

For screening purposes, Pendegraft has alleged the existence of an objectively serious medical condition. A serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Pendegraft's wound and infection-related problems qualify as serious for screening purposes.

To bring a medical claim, Pendegraft also must allege that each of the named defendants acted in a reckless fashion in response to his condition. *Estrada v. Reed*, 346 Fed. App'x 87, 91 (7th Cir. 2009). This is a defendant-by-defendant inquiry, so the Court will evaluate the allegations against each group of defendants named in Pendegraft's case in turn.

The allegations against some of the jail defendants put forth arguably reckless conduct, at least for purposes of screening. Pendegraft says that Nordike, Arnold, and Tollie refused to give him bandages to treat an open wound and prevent an infection in mid-May 2014. A failure to provide treatment to a prisoner can constitute recklessness, so these allegations state arguable claims. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (officials can violate the Constitution if they fail "to provide treatment for serious medical needs"). Pendegraft also

alleges that Butilaid saw him twice during his time at the jail and, while referring him for care to specialists, did not take steps to push that care along or follow up. He also claims that Faulkner and Etter drug their feet in getting him to specialists. A delay in treatment can also constitute reckless conduct, so Pendegraft has stated arguable claims against Butilaid, Faulkner, and Etter. *See*, *e.g.*, *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010) (error to dismiss complaint at screening when prisoner alleged that guards knew of need for follow-up yet forced prisoner to "wait three months" for care). Pendegraft next says that Brandenmeyer and Tollie failed to follow the directions of physicians concerning bandages and antibiotics, and that kind of conduct, too, can constitute recklessness. *See Arnett*, 658 F.3d at 753 ("Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist state a [constitutional] claim."). As such, **Count 1** may proceed as to Nordike, Arnold, Tollie, Butilaid, Faulkner, Etter, and Brandenmeyer.

While Count 1 may proceed as to these Clinton County defendants, Count 1 must be dismissed as to a number of the other jail-related defendants named in the complaint. For example, Pendegraft has named Kreke, the Sheriff of Clinton County, as a defendant, but he does not include any allegations related to Kreke in the narrative of his complaint. Merely including the name of an individual in the caption of a case, without saying how he was involved in a case or what he did that was improper, is insufficient to bring a claim against him. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). In addition, Pendegraft has named Deputy Shumacker, but all he says about him is that he was involved with determining whether

Pendegraft needed to eat before a medical scan at an outside facility, and that does not suggest any recklessness on his part. Finally, Pendegraft has named the outside specialists who saw him at the behest of Clinton County jail officials, but his allegations there suggest negligence at best (and probably not even negligence). It is critical to remember that medical malpractice and negligence claims are not actionable under § 1983, but are instead the grist of state law. *See*, *e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Mayan v. Weed*, 310 Fed. App'x 38, 40–41 (7th Cir. 2009) (allegations of "medical malpractice, negligence, or even gross negligence" are not sufficient to permit liability in detainee or prisoner cases). So **Count 1** must be dismissed without prejudice as to Kreke, Ruff, Shumacker, and Subani.

That leaves Pendegraft's allegations against the John Doe physician at Graham and against the officials at Vienna. Concerning the John Doe physician, Pendegraft says that he failed to provide Pendegraft with prescriptions that were ordered by a specialist to treat his infection-related problems, and that is sufficient to state an arguable claim. *Arnett*, 658 F.3d at 753. Concerning the Vienna officials, Pendegraft says that Murphy, Beasly, and George failed to provide him with bandages to prevent complications related to his infection problems, and that too is enough to state a claim at screening. *Chapman*, 241 F.3d at 845. Finally, Pendegraft also includes some allegations concerning Dr. Adams, the doctor that he saw when he arrived at Vienna, hinting that he told Adams of his hepatitis and bone-related infections and that he still has not received adequate treatment for those since arriving at Vienna. This claim must be dismissed because Adams is not named in the caption of the complaint or in the complaint's list of defendants, so he is not a party to this case. *See Myles v. United States*, 416 F.3d 551, 551–52

(7th Cir. 2005) (party must be "specif[ied] in the caption"). Accordingly, **Count 1** may proceed as to Doe, George, Murphy, and Beasly, but must be dismissed without prejudice as to Adams.

As his next count, Pendegraft alleges that Tollie, a deputy at the Clinton County Jail, retaliated against him for complaining about his lack of medical treatment (**Count 2**). To put forth a retaliation claim, a plaintiff must "plausibly allege" that he "engaged in activity protected by the First Amendment," that he "suffered an adverse action that would likely deter future First Amendment activity," and that the "First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012). Here, Pendegraft's complaint puts forth a sequence of events that could suggest retaliatory conduct on the part of Tollie, so **Count 2** may proceed against him.

As his final claim, Pendegraft faults his public defender for allowing him to enter into a plea agreement for his underlying offense, as he only entered that plea to speed along his treatment (**Count 3**). This claim fails at the gate. Pendegraft should know that § 1983 does not authorize lawsuits against all persons; rather, § 1983 imposes liability only against persons who violate a party's rights while acting "under color of law." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745–46 (7th Cir. 2010). As relevant here, public defenders do not act under color of law when they are "performing traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Instead, they act as "independent advocate[s]" who are "free from state control." *Id.* And because public defenders are free from state control when defending the indigent, they "cannot be sued under 42 U.S.C. § 1983." *See McDonald v. White*, 465 Fed. App'x 544, 548–49 (7th Cir. 2012); *see also Swift v. Swift*, 556 Fed. App'x 509, 510 (7th Cir. 2014) ("The public defenders were not state actors and

could not be sued under § 1983 for performing their professional duties in representing [the prisoner]."). So **Count 3** against Hiliganstien must be dismissed with prejudice.

A few notes are in order concerning Pendegraft's claim against the Doe physician at Graham. First, because the Doe physician is the only party named in this case from Graham, the Court will add Cecil Polley, the Warden of Graham, to this case, but only in his official capacity and for the sole purpose of assisting with identification of the Doe physician. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996). Second, the Doe physician must be identified with particularity before service of the complaint can occur on him. Where a prisoner's complaint states specific allegations describing the conduct of unknown prison staff sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying Doe will be set by the magistrate judge. Once Doe is identified, Pendegraft shall file a motion to substitute the named individual with the Doe designate.

A few matters also need to be addressed concerning Pendegraft's possible requests for preliminary relief in this case. In Pendegraft's complaint, he includes a request for an order compelling Illinois Department of Corrections officials to accommodate his medical needs. (Doc. 1.) In addition, on August 13, 2015, Pendegraft filed a motion to withdraw a previous motion to dismiss IDOC–affiliated officials from the case–that withdrawal motion references an ongoing failure by Vienna officials to treat a shoulder bone infection that Pendegraft has developed.[1] (Doc. 8.) To the extent this motion seeks to withdraw his motion to dismiss, the

---

[1] Pendegraft's motion to withdraw also includes some non-specific allegations about retaliation by other prison officials. To the extent he seeks to bring additional claims of retaliation related to Vienna and Graham officials, he will need to file an amended complaint–he cannot bring additional claims via

motion will be granted, and the motion to dismiss (Doc. 7) will be stricken. In addition, the Court will construe the reference to an order for medical care in the complaint and the reference to care in the withdrawal filing as requests for preliminary injunctive relief. The Court's preliminary review indicates that these requests merit further attention. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's requests for injunctive relief will be referred to United States Magistrate Judge Donald G. Wilkerson, who shall resolve the request for relief and issue a report and recommendation. Furthermore, Acting Warden Jean Campanella will be added to this case in her official capacity only, for the purpose of responding to any injunctive orders issued by the Court. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **NORDIKE**, **ARNOLD**, **TOLLIE**, **BUTILAID**, **FAULKNER**, **ETTER**, **BRANDENMEYER**, **JOHN DOE**, **GEORGE**, **MURPHY**, and **BEASLY**. **COUNT 1** is **DISMISSED without prejudice** as to **KREKE**, **RUFF**, **SUBANI**, **SHUMACKER**, and **ADAMS**. Because there are no further claims against them, **KREKE**, **RUFF**, **SUBANI**, **SHUMACKER**, and **ADAMS** are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **TOLLIE**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED with prejudice**. As there are no further claims against him, **HILIGANSTIEN** is **DISMISSED** from this case.

---

piecemeal motions. Any amended complaint should comply with the Federal Rules of Civil Procedure and this Court's local rules. An amended complaint should also stand on its own; it must include all of the claims that a plaintiff wishes to bring in an action.

**IT IS FURTHER ORDERED** that **WARDEN CECIL POLLEY** of Graham Correctional Center will be named in this case in his official capacity for the sole purpose of assisting with the identification of the John Doe defendant.

**IT IS FURTHER ORDERED** that **ACTING WARDEN JEAN CAMPANELLA** will be named in this case in her official capacity for the purpose of responding to injunctive orders.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **NORDIKE**, **ARNOLD**, **TOLLIE**, **BUTILAID**, **FAULKNER**, **ETTER**, **BRANDENMEYER**, **JOHN DOE**, **GEORGE**, **MURPHY**, **BEASLY**, **POLLEY**, and **CAMPANELLA**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting

service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **NORDIKE**, **ARNOLD**, **TOLLIE**, **BUTILAID**, **FAULKNER**, **ETTER**, **BRANDENMEYER**, **JOHN DOE**, **GEORGE**, **MURPHY**, and **BEASLY** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Defendant **CAMPANELLA** should also enter an appearance and file an appropriate responsive pleading to the complaint to the extent the complaint requests injunctive relief.  Defendant **POLLEY** should also enter an appearance so that he is present in this case for purposes of responding to requests related to identification.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to Magistrate Judge Donald G. Wilkerson for consideration.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending requests for preliminary injunctive relief (Docs. 1 & 8) are hereby **REFERRED** to Magistrate Judge Donald G. Wilkerson, who shall resolve the requests for injunctive relief and issue a report and recommendation.  The period for filing any objections

to Judge Wilkerson's report and recommendation shall not exceed **14 days** from the date of the report.  Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Judge Wilkerson.

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw his previous motion to dismiss (Doc. 8) is **GRANTED**.  Plaintiff's motion to dismiss (Doc. 7) is **STRICKEN**.

Further, this entire matter is **REFERRED** to Magistrate Judge Donald G. Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 17, 2015**

 _____
 **NANCY J. ROSENSTENGEL**
 **United States District Judge**